**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DENNIS DOWLING,**

**Plaintiff,**

**v.** **Case No: 8:26-cv-02284-MSS-LSG**

**STANTEC, INC., STANTEC ARCHITECTURE INC., and STANTEC CONSULTING SERVICES INC.,**

**Defendants.**

---

# ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion to Remand, (Dkt. 10), and Defendants' response in opposition thereto. (Dkt. 11) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion to Remand.

## I. BACKGROUND

Plaintiff is a Canadian citizen and real estate development professional. (Dkt. 1-1 ¶ 2) At all times relevant to this action, Plaintiff resided in Pasco County, Florida on a TN non-immigrant work visa. (Id.) Defendants are a tripartite corporate family that repeatedly sponsored Plaintiff's TN visas. (Id. ¶¶ 3–5) Defendants consist of Stantec Inc. ("SI"), the corporate parent, and two wholly owned subsidiaries, Stantec Architecture Inc. ("SAI") and Stantec Consulting Services Inc. ("SCSI"). (Id.)

SI is a foreign corporation incorporated under the laws of Canada. (Id. ¶ 3) SAI and SCSI are domestic corporations incorporated under the laws of the States of North Carolina and New York respectively. (Dkt. 1 ¶¶ 2(b)(ii)-(iii)) Their principal places of business are in Illinois and Colorado respectively. (Id.)

Plaintiff alleges that on September 7, 2017, SAI extended Plaintiff an offer of employment for seventy-five dollars per hour to begin on October 2, 2017. (Dkt. 1-12) Plaintiff accepted, forming an at-will employment agreement. (Id.) Because Plaintiff was not a United States citizen, Defendants directed their attorneys to prepare a TN visa application package on Plaintiff's behalf. (Dkt. 1-13) Included in this package was a support letter from SCSI representing that Plaintiff would "be paid a rate of $75/hr by Stantec in the US," requesting that Plaintiff be given TN status for three years, and requesting that his I-94 Card state "Stantec." (Id.) Defendants sent the package to federal immigration authorities on September 26, 2017, and Plaintiff's TN status was granted thereafter. (Id.)

Three years later, on September 25, 2020, Defendants submitted another TN support letter requesting an additional three years of TN status, requesting that Plaintiff's "I-94 Card state[] 'Stantec,'" and representing that Plaintiff would be "paid a salary of $156,000[.00] CAD by Stantec in Canada."[1] (Dkt. 1-1 at 9–11) Federal immigration authorities again granted Plaintiff TN status. On September 25, 2023, SAI sent a final TN support letter requesting an additional three years' extension of

[1] The 2020 TN support letter was sent by SAI. (Dkt. 1-1 at 9)

Plaintiff's TN status. (Dkt. 1-14) This time the letter requested that Plaintiff's "I-94 Card state[] 'Stantec Architecture Inc.'" and represented that Plaintiff would be "paid a salary of $75 USD per hour by Stantec USA." (Id.)

This matter arises from Plaintiff's allegation that despite Defendants' representations to federal immigration authorities, he was paid on average only $13,600.00 USD per year from 2020-2023 through Defendants' U.S. hourly payroll system.[2] (Dkt. 1-1 ¶ 20) In short, Plaintiff alleges that Defendants' 2020 TN support letter constituted a valid and enforceable contract and that Defendants underpaid him by approximately $468,000.00 CAD. (Id. at 8)

Plaintiff further alleges that he sought payment of the disputed back wages on numerous occasions to no avail. (Id. ¶ 21-26) On May 29, 2026, Defendants notified Plaintiff that his employment would be terminated, effective June 26, 2026. (Id. at 27–28) In response, Plaintiff commenced this action, asserting claims for breach of contract and retaliation under Florida's Private Whistleblower Act, Fla. Stat. § 448.102. (Id. at 6–7) Defendants removed the action based on a claim of federal diversity jurisdiction, contending that SI was fraudulently joined. (Dkt. 1 ¶ 2) Plaintiff moves to remand.

## II. STANDARD OF REVIEW

Federal courts are courts of limited subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). "In a

[2] The average of social security wages reported on Plaintiff's W-2s from 2020-2023 is $13,474.69. (Dkt. 1-1 at 21-24)

given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). A federal court has diversity jurisdiction over a suit if the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship. See 28 U.S.C. § 1332. A corporate entity is a citizen of the state in which it is incorporated and the state in which its principal place of business is located. 28 U.S.C. § 1332(c). Complete diversity exists only if "*each* defendant is a citizen of a different state from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).

Motions to remand are governed by 28 U.S.C. § 1447, which authorizes a plaintiff to seek remand of a case based on a jurisdictional or procedural defect and permits a court to order payment of attorney's fees and costs incurred as a result of the removal. 28 U.S.C. § 1447. When a case is removed based on diversity jurisdiction, the court must remand the case to state court if there is not complete diversity between the parties. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). However, an action may nevertheless be removable if the joinder of non-diverse parties is fraudulent. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983).

Fraudulent joinder occurs when a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction. Henderson v. Wash. Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate, by clear and convincing evidence, that: "(1)

there *is no possibility* the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997) (citing Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989) (emphasis added).

With respect to the first type of fraudulent joinder, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.1998) (emphasis added).

In determining "whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538 (citing B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (11th Cir. 1989)). A federal court should make "these determinations based on the plaintiff's pleadings at the time of removal; but the court may [also] consider affidavits and deposition transcripts submitted by the parties." Id.

It is important to note that "[w]hile 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary

judgment under Fed. R. Civ. P. 56(b) . . . the jurisdictional inquiry must not subsume substantive determination.'" Id. (quoting B., Inc., 663 F.2d at 549 n.9, 550); see also Montgomery & Larmoyeux, 992 F.Supp. 1372, 1375 (S.D. Fla. 1998) ("Therefore, a plaintiff need not show that he can survive a motion for summary judgment; the standard is much lighter"). Indeed, federal courts must be certain of their jurisdiction before "embarking upon a safari in search of a judgment on the merits." Crowe, 113 F.3d at 1538. As such, "[w]hen considering a motion to remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. In other words, a "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously *fraudulent* or *frivolous* claims." Id. at 1542 (emphasis added).

## III. DISCUSSION

The issue in this case is whether SI was fraudulently joined. Defendants contend that Plaintiff cannot state a claim against SI because: (1) no privity of contract exists between Plaintiff and SI, (2) SI is not an "employer" under the Florida Private Whistleblower Act, and (3) SI is not subject to personal jurisdiction in Florida. Accordingly, they argue that SI was fraudulently joined.

### A. Breach of Contract

Under Florida law, the formation of a valid contract requires an offer, acceptance, consideration, and sufficiently definite essential terms. Rauch v. AJP Pine Island Warehouses, Inc., 313 So. 3d 625, 630 (Fla. 4th DCA 2021). Defendants

contend that the only contract formed was an at-will employment agreement between Plaintiff and SAI. (Dkt. 11 at 7–9) The record is not so clear that the Court can conclude that Plaintiff has *no possibility* of prevailing.

The 2017 offer letter states "[t]he following information outlines the terms of your Offer of Employment with Stantec Architecture Inc. *and any of its affiliated . . . companies (collectively "Stantec")* . . . . We look forward to having you join *Stantec*." (emphasis added). "The term 'affiliate' is defined as '[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation.'" See Churchville v. GACS Inc., 973 So. 2d 1212, 1215 (Fla. Dist. Ct. App. 2008) (citing Black's Law Dictionary 59 (7th ed. 1999)).

While the "affiliated company" language does not necessarily make each affiliate a party to the agreement, the Court cannot conclude that the language categorically excludes SI from the contractual relationship, particularly when a subsequent representation identified "Stantec in Canada" as the entity responsible for Plaintiff's compensation. Assuming for the sake of argument that the 2017 agreement did—through its express reference to affiliated companies and collective Stantec designation—oblige SI, the question is whether the 2020 TN support letter modified[3] that agreement to require SI to pay Plaintiff $156,000.00 CAD per year. [4]

---

[3] Plaintiff, proceeding *pro se*, characterizes the 2020 TN support letter as a binding agreement under theories of novation and judicial estoppel. Liberally construed, his allegations concerning the 2017 employment agreement and subsequent 2020 compensation representation also raise the question whether the parties modified their contractual relationship. See Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).

[4] The Court notes Defendants' argument regarding the unrebutted declaration of Mr. Guillermo Couto, (Dkt. 11 at 5), but does not find it controlling. Unlike the affidavits at issue in Legg v. Wyeth, 428 F.3d 1317 (11th

Florida law permits parties to modify an existing contract through a subsequent agreement or their course of conduct. St. Joe Corp. v. McIver, 875 So. 2d 375, 381–82 (Fla. 2004). A modification requires mutual assent and consideration; one party cannot unilaterally alter another party's contractual obligations. Id. at 382. Whether a contract has been modified is ordinarily a question of fact. Id.

The circumstances of this case present disputed issues of fact concerning whether representations made in connection with an employee's immigration authorization may modify the terms of a preexisting employment agreement or independently create enforceable contractual obligations. Florida courts have not yet addressed these questions, but federal courts applying Georgia contract law have considered them in similar contexts. See, e.g., de la Fuente v. Columbia Recycling Corp., 704 F. Supp. 3d 1333, 1339 (N.D. Ga. 2023) (declining to dismiss breach of contract claims premised on subsequent unsigned employment offers promising annual salaries inconsistent with earlier agreements, where contemporaneous TN support letters corroborated the subsequent offers); Ruiz v. Sewon Am., Inc., 766 F. Supp. 3d 1251, 1267 (N.D. Ga. 2025) (concluding that subsequent employment offers promising annual salaries, considered together with contemporaneous TN support letters that supplied additional material terms could sufficiently establish enforceable contracts); Aquino v. Mobis Alabama, LLC, 739 F. Supp. 3d 1152, 1169 (N.D. Ga.

Cir. 2005), which negated facts essential to the plaintiffs' claims, the Couto declaration does not eliminate the potential contractual significance of the "affiliated . . . compan[y]" language and the representation to immigration authorities that Stantec in Canada *would* pay.

2024) (dismissing breach of contract claims premised on TN support letters where plaintiffs failed to allege that the letters, standing alone, constituted enforceable employment agreements).

These decisions do not control the application of Florida law, but they illustrate that the contractual significance of TN support letters depends on the surrounding employment documents and the circumstances of their issuance. Here, the 2020 TN support letter representation was made in connection with Plaintiff's continued employment and the renewal of his United States work authorization. Viewed in the light most favorable to Plaintiff, these circumstances permit at least an arguable inference that the Parties agreed to modify the compensation terms of their existing employment relationship. Whether SAI possessed authority to bind SI, whether the parties mutually assented to a modification of compensation, and whether SI was bound by any resulting agreement are questions the Court need not resolve at this stage. For now, it suffices to recognize that there is at least a possibility that a state court would find Plaintiff to have stated a valid claim against SI.

Consequently, the Court finds that Defendants have not demonstrated by clear and convincing evidence that Plaintiff's breach of contract claim against SI has no possibility of surviving. Because that conclusion is sufficient to defeat Defendants' fraudulent-joinder argument, the Court declines to address Plaintiff's whistleblower retaliation claim.

**B. Personal Jurisdiction**

Defendants also argue that SI is not a proper party in this action because it is not subject to personal jurisdiction in Florida. (Dkt. 11 at 10–11). They emphasize that a subsidiary's business activity in Florida cannot, without more, establish personal jurisdiction over its parent. (Id.)

One of the bases for personal jurisdiction under Florida's long arm statute is "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. Ann. § 48.193(1)(a)(7). Plaintiff alleges a contractual relationship involving SI, services performed in Florida, and an obligation by SI to compensate him for those services.[5] Whether those allegations establish personal jurisdiction over SI implicates questions that overlap with the merits of Plaintiff's breach of contract claim. The state court may likewise address them on remand.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion to Remand, (Dkt. 10), is **GRANTED**.
2. The Clerk is **DIRECTED** to **REMAND** this case to the Sixth Judicial Circuit Court in and for Pasco County, Florida.

[5] The Court does not opine on whether SI's obligation, if any, would have had to be performed in the State of Florida.

3. The Clerk is **DIRECTED** to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida this 23rd day of November 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party